(19 App. Div. 541.)

LINTHICUM v. CASWELL.

(Supreme Court, Appellate Division, Third Department. July 6, 1897.)

1. DRAFTS—EVIDENCE OF PAYMENT.
    One C. drew two drafts for $3,000 and $2,000, respectively, in favor of plaintiff, on a company of which he was treasurer, and accepted them in the name of the drawee. Sums amounting to about $3,600 were afterwards paid to plaintiff by the company, but were claimed by plaintiff to have been paid on account of another indebtedness. Afterwards C. paid $1,500 on one draft and $1,000 on the other, such payments being indorsed on the drafts, and no other payments being indorsed. There was evidence that C. was expressly informed that the earlier payments to plaintiff were made on the other account, and that he assented thereto. *Held*, that a finding in an action against C. on the drafts, that the earlier payments were not made on the drafts, was justified.

2. SAME—DEMAND—WAIVER OF DEFECTS.
    When drafts are drawn on a company by one who is its president and treasurer, and has charge of its finances, and are accepted by him in its name, and interest on the drafts is afterwards credited to the payee on the books of the company, it may be inferred as a fact that such drawer had knowledge of the circumstances, sufficient to make his subsequent part payment of the drafts a waiver of any infirmity in the demand and notice, and to notify him of the time from which interest ran.

Appeal from trial term, Ulster county.

Action by Elsie B. Linthicum against Caroline G. Caswell, as executrix of Horace T. Caswell, deceased. From a judgment and order

in favor of plaintiff for $3,830.23, with interest from October 5, 1896, together with the disbursements in the action, defendant appeals.   Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

John J. Linson, for appellant.
P. Cantine, for respondent.

MERWIN, J.   This action is brought to recover the amount unpaid upon two drafts drawn by the defendant's testator upon and accepted by the Bigelow Blue Stone Company, and transferred to the plaintiff. A copy of one of the drafts, with its acceptance, is as follows:

"$3,000.                                    Malden, N. Y., August 1, 1888.
"On demand, pay to the order of Elsie B. Linthicum three thousand dollars, value received, and charge the same to account of H. T. Caswell.
"To the Bigelow Blue Stone Co., Malden, N. Y.          H. T. Caswell.
"Accepted, payable at the office of the company, at Malden, N. Y.
                                        "Bigelow Blue Stone Co.
                                        H. T. Caswell, Treas."

The other draft was for $2,000, of the same date and similar in form, and accepted in like manner.   These drafts, after their execution and acceptance, were delivered by the company to the plaintiff, and she thereupon paid to the company therefor the full face thereof.   Caswell, as treasurer, received the proceeds.   The company was a domestic corporation, and Caswell, at the time of the making of the drafts, was its president and treasurer and one of its trustees, and continued to be such up to the time of his death, in 1895.   In the complaint it is alleged that on May 14, 1889, there was paid the sum of $250 on the interest on these drafts, and on the 22d November, 1889, the further sum of $150 on such interest; that on the 26th November, 1892, Caswell personally paid $1,500 on the $3,000 draft and $1,000 on the $2,000 draft.   It is found by the trial court that these payments were made as alleged, the items for interest being paid by the company, and that no other or further payment has been made on either of the drafts. In the answer there is a plea of payment, and the appellant now claims that the court erred in not finding that the drafts had been fully paid.

It appears that after November 22, 1889, and prior to November 26, 1892, the plaintiff received from the company divers sums of money, amounting, as the defendant claims, to about the sum of $3,600. These sums appear charged to the plaintiff on the books of the company.   The contention of the appellant is that these sums should be treated as payments on the drafts, and, if so, the amounts paid by Mr. Caswell on the 26th November, 1892, would more than pay the balance then unpaid.   The claim of the plaintiff is that during this period she was the owner or beneficially interested in a large claim against the company as legatee under the will of her father, Hobart Bogardus, and that the moneys in question were demanded and received by her upon that claim.   Hobart Bogardus died in the spring of 1888.   He had been largely interested in the company, was one of its directors, and its cashier, and at his death he had a large amount invested in

the business, and the company, as he claimed, owed him about $28,000. There was to the credit of his estate on the books of the company on the 26th January, 1889, the sum of $27,500. In the will of Bogardus there is a specific bequest to the plaintiff of thirteen twenty-eighths of the amount invested by the testator in the business of the company. The plaintiff and her brother, H. C. Bogardus, who was, after the death of his father, the cashier of the company, were the executors under the will. The legacy to the plaintiff being specific, it needed only the assent of the executors to vest the title in the plaintiff. 2 Williams, Ex'rs (6th Am. Ed.) 1474, 1482; Deposit Co. v. Price, 87 N. Y. 542, 549. This assent may be express or implied, and the rule applies though the legatee is himself executor. Blood v. Kane, 130 N. Y. 514, 29 N. E. 994. The assent of the executors to the legacy to plaintiff may easily be inferred, and, that being so, the plaintiff had a right to call for payments to her upon the debt of the company to her father. There is evidence tending to show, and upon which the trial court had a right to find, that the payments in controversy were made to the plaintiff in pursuance of requests by her for payments on her share or interest in her father's claim, and that they were received by her on that interest, and not on the drafts in question. If that was the fact, they are not available to the defendant as payments on the drafts. Besides, there is evidence that Mr. Caswell, at the time he made the payments on November 26, 1892, had an account of the moneys which the plaintiff had received, and was told, in substance, that she had drawn them against her interest in the account of her father, and he replied, "That is all right." After that he made the payments on the drafts, and directed indorsements of the same to be made on the drafts, which was done in his presence. There were then no other indorsements on the drafts. No error is, I think, apparent in the refusal of the trial court to allow the items in controversy as payments on the drafts.

It is further contended by the appellant that there was no proper presentment of the drafts for payment or notice to him of nonpayment; that the drafts, being payable on demand, should have been presented within a reasonable time, and notice given to the drawer, and that this was not done. There seems to have been no formal demand until November 26, 1892. The trial court, in effect, found that the payments made by Caswell individually on November 26, 1892, were made by him with full knowledge of any infirmity that existed as to demand or notice, and that thereafter Caswell, with full knowledge of the facts, promised to pay the amount unpaid on the drafts. Caswell was the treasurer of the corporation, and also its president. He had charge of the financial part of the business, and it was a part of his duty to make and draw all papers which would be a liability against the company, and he appeared generally to keep track of the finances of the business. Knowledge may be inferred as a fact from the promise under the attending circumstances. 3 Kent, Comm. 113. See, also, Mathews v. Allen, 16 Gray, 594. The finding that Caswell had full knowledge of the situation when he made the payment and promised to pay the balance is, I think, sustained by the evidence, and by such payment and promise there was a waiver of any defect in the

presentment or notice.    2 Daniel, Neg. Inst. §§ 1147, 1165; Meyer v. Hibsher, 47 N. Y. 265.

The trial court seems to have allowed interest from May 14, 1889. That was the date of the first payment of interest on the drafts as found by the trial court.   The appellant claims that interest was not allowable until the date of the formal demand on the 26th November, 1892.   Assuming, as claimed by the appellant, that the drafts did not draw interest until demand, the fact that the plaintiff was credited on the books of the company on January 26, 1889, with the sum of $250 for interest, which was paid to her on May 14, 1889, would seem to indicate that a demand sufficient to set interest running had been made.   The witness Bogardus testifies that the entry of January 26, 1889, was made along with other liabilities for interest, one of which was to Mr. Caswell, "just as we were getting the books ready for an annual statement."   Presumptively, this entry was known to Mr. Caswell, the chief financial officer of the company, and his subsequent recognition of his personal liability for the debt should be deemed to have been made with the knowledge that the debt bore interest.   There is nothing to indicate that it was not so understood by all parties.   No good ground is apparent for a reversal of the judgment.

Judgment affirmed, with costs.   All concur.